UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED RIVERA, JR.,<br>    *Plaintiff*,<br><br>v.<br><br>TRANS UNION, LLC,<br>    *Defendant*. | No. 3:22-cv-1038-MPS |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

This case arises from consumer reports furnished by Defendant Trans Union, LLC ("Trans Union") regarding Plaintiff Wilfred Rivera, Jr. Rivera, proceeding *pro se*, alleges violations of the Fair Credit Reporting Act ("FCRA"). Trans Union now moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6). For the reasons stated below, I grant Trans Union's motion to dismiss under Rule 12(b)(6).

**I.     BACKGROUND**

    **A.  Procedural Background**

This action was filed on August 17, 2022. ECF No. 1. Rivera filed a motion to proceed *in forma pauperis*, which I referred to Magistrate Judge S. Dave Vatti. ECF No. 2; ECF No. 6. I adopted Judge Vatti's recommended ruling denying the motion without prejudice and dismissed the case. ECF No. 12.

I reopened the case on February 9, 2024, after Rivera filed an amended complaint. ECF No. 15; ECF No. 16. Rivera filed another motion to proceed *in forma pauperis*, which I denied without prejudice because it did not contain a financial affidavit. ECF No. 18; ECF No. 19. He submitted another motion with a financial affidavit, which I granted. ECF No. 20; ECF No. 21.

TransUnion moved for judgment on the pleadings on December 27, 2024. ECF No. 37; ECF No. 38. I directed Rivera to either file a response to the motion or an amended complaint

1

addressing the alleged defects in that motion. ECF No. 39. Rivera filed a second amended complaint, but it did not have a proper case caption, so I directed him to file another amended complaint with a proper caption. ECF No. 40; ECF No. 43. His third amended complaint is the operative complaint ("the complaint"). ECF No. 44. I denied Trans Union's motion for judgment on the pleadings as moot in light of these amendments. ECF No. 47.

TransUnion filed the present motion to dismiss, which incorporates the arguments made in its motion for judgment on the pleadings, on January 29, 2025. ECF No. 45. It also sent Rivera a notice concerning its motion, as required by Local Rule 12(a). ECF No. 46. Rivera submitted a response, and TransUnion filed a reply in support of its motion. ECF No. 48; ECF No. 52.[1]

B. Factual Background

The following facts are drawn from Rivera's complaint as well as the documents attached to it.[2] ECF No. 44. These facts are accepted as true for the purpose of this motion. I note, however, that the complaint and attached exhibits are very long and difficult to follow. His factual allegations are disorganized and interspersed with legal assertions, to which I owe no deference even at this procedural stage.[3] I have done my best to make sense of Rivera's claims and to construe his allegations favorably to him.

---

[1] Rivera also submitted a sur-reply, ECF No. 53, but I will not consider it, as "sur-replies are not permitted under the Local Rules of the District of Connecticut." *DeRay v. Larson*, No. 3:02-CV-2139(JCH), 2004 WL 2211939, at *4 (D. Conn. Sept. 29, 2004); *see* D. Conn. L. Civ. R. 7(d).

[2] "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996). Courts should not adopt as true facts stated in an exhibit unless the plaintiff has attached the exhibit to the complaint for the truth of those assertions. *See Pearson v. Gesner*, 125 F.4th 400, 407-09 (2d Cir. 2025).

[3] Rivera also makes additional legal claims and factual allegations in the attached exhibits, which I will consider only insofar as they are clearly referenced in the complaint itself. *Clary-Butler v. AFSCME Loc. 3144 Union*, No. 3:17-CV-00597 (JAM), 2017 WL 1393691, at *2 (D. Conn. Apr. 14, 2017) ("Although plaintiff may refer to and

2

According to Rivera, Trans Union was once a car company called "Union Tank Car Company," which was founded in 1968 and operated primarily in the rail car leasing business. ECF No. 44 at 6. Today, Trans Union assembles private consumer information in order to furnish algorithmic credit reports for various business purposes. *Id.* These reports are based on the "Fair Isa[a]c Corporation" ("FICO") score and are used to assess consumers' creditworthiness. *Id.*

Trans Union's "Data Privacy Policy" provides that the company may "sell/share the personal information collected with certain service providers" for various purposes, but that it does not "use or sell/share this information for marketing purposes." ECF No. 44-4 at 3; *see also* ECF No. 44 at 7. Rivera adds that Trans Union "may request permission to sell/share user personal information for a specific purpose" not enumerated in the Data Privacy Policy. ECF No. 44-4 at 4; *see also* ECF No. 44 at 7. In such cases, it "will notify users and request consent before collecting the personal information or before the personal information users have already provided is sold/shared for such purpose. Users may revoke consent at any time."
 ECF No. 44-4 at 4; *see also* ECF No. 44 at 7.

Though Rivera has never consented to or instructed the use or sale of his personally identifiable information ("PII"), Trans Union obtained and furnished this information for business purposes. *Id.* at 7-8, 10. Trans Union also furnished his consumer report without his consent and included on his report "[a]ccounts charged for collections," and other "[a]dverse information," such as late payments, closed accounts, and "utilization amount[s]." *Id.* at 11, 13. Additionally, Trans Union procured his consumer report "for the purposes of reselling" and sold

---

attach documents to her complaint if she wishes, such attached documents are not a substitute for plaintiff alleging specific facts and legal claims that must be…stated in the body of the complaint itself.").

his "social security information [and] transactional information." *Id.* at 8-11. Rivera contends that this misconduct was willful. *Id.* at 5, 10.[4]

Rivera notified Trans Union about inaccuracies on his consumer report and other misconduct. *Id.* at 5, 11. He has also "exercised his right to opt-out to no avail." *Id.* at 10.

Trans Union claimed that it conducted a "reinvestigation" regarding Rivera's dispute and that it verified that the information on the report was accurate. *Id.* at 5, 14. But this reinvestigation was not "proper" and was not conducted in a "non-bias[ed] manner." *Id.* at 14. Like all other consumer reporting agencies ("CRAs"),[5] Trans Union uses the Online Solution for Complete and Accurate Reporting ("e-OSCAR") to compile consumer disputes. *Id.* at 15. This web-based system allows "furnishers" to communicate with "the CRA"—that is, the consumer reporting agency. *Id.* at 16. CRAs can initiate a "reinvestigation request" by sending the furnisher an Automated Consumer Dispute Verification ("ACDV") form through e-OSCAR. *Id.* (internal quotation marks omitted). The ACDV form includes information identifying the consumer and one or two codes that summarize the consumer's dispute. *Id.* It will also sometimes include a short, free-form narrative in what is known as the "FCRA Relevant Information" field. *Id.* e-OSCAR has twenty-six dispute codes, which CRA clerks select from a dropdown menu *Id.* These codes include "Not his/hers" and "Claims account closed." *Id.* Procedure manuals provide the clerks with guidance on how to convert the consumer's written

---

[4] Rivera alleges that, before this case was ever filed, Trans Union was notified by the Consumer Financial Protection Bureau ("CFPB") that it had violated the FCRA by "furnishing unlawful transactional information," including information that was inaccurate. ECF No. 44 at 5. According to Rivera, this CFPB complaint put Trans Union "on notice" of its erroneous consumer reporting. *Id.* at 14.

[5] Rivera uses the acronym "CRA" without expressly defining it. *See* ECF No. 44 at 16. But it appears to be shorthand for "consumer reporting agency," based on the context in which he uses either term. *See id.* (referring to "[c]onsumer reporting agency clerks" shortly after using the term "CRA").

4

dispute into these dispute codes.  *Id.*  CRA clerks' selection of these dispute codes is "[t]he only human involvement" in the reinvestigation process.  *Id.*  There is no "person to person investigation[]" into the consumer's claims.  *Id.*

Defense counsel sent Rivera an investigation report from Trans Union on September 5, 2024.[6]  *Id.* at 17; *see also* ECF No. 44-2 at 2.  On September 17, 2024, after receiving this report, Rivera asked Trans Union "to provide all relevant information that was used in th[is] 'reinvestigation' process [so that he could] determine [its] alleged accuracy."  *Id.* at 15, 17.  Trans Union has not complied with his request.  *Id.* at 15.  Nor has it disclosed the steps it took to verify the information on the report, as requested by Rivera.  *Id.*

TransUnion has also refused to modify or delete the inaccurate information on Rivera's consumer report and has continued to willfully furnish inaccurate reports, including since the filing of this case.  *Id.* at 5, 11, 13-15.  Specifically—and as evidenced by various discrepancies between the "1st copy of consumer report sent by defendant counsel on September 5th [and]…a 2nd copy of consumer report sent bv defendant counsel on November 4th"—Trans Union has reported "inaccurate payment history," "utilization amount[s]," and balances for Rivera.  *Id.* at 13, 15; *see also* ECF No. 44-2 at 38-66.

---

[6] Rivera alleges both in the complaint and its attachments that defense counsel "sent 2 copies of 'investigative consumer report' results on September 5, 2024 and on November 4, 2024." ECF No. 44-2 at 38; *see also* ECF No. 44 at 17.  He sometimes also describes the reports sent by defense counsel on these dates as "consumer reports." *See, e.g., id.* at 15.  The copies of the two reports that are attached to his exhibit show that the November 4th report was issued in 2023, not 2024, and is a "Personal Credit Report" that was requested by Rivera, rather than a reinvestigation report.  *See id.* at 19.  Since Rivera's complaint indicates that these attachments are accurate copies of the reports he received from defense counsel on these dates, I will adopt as true the dates and titles of the attached reports, rather than Rivera's descriptions of them.

Trans Union's misconduct has caused Rivera "severe damages including losing [his] ability to exercise [his] granted right to extend credit[,] being discriminated against[,] and…caus[ing him] to completely lose faith in the Banking System." *Id.* at 12.

## II. LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

## III. DISCUSSION

Rivera brings various claims under the FCRA.  Rivera also raises various arguments regarding the Gramm-Leach-Bliley Act ("GLBA") and the Privacy Act of 1974 ("Privacy Act").  For the reasons set forth below, I grant Trans Union's motion to dismiss Rivera's claims.

### A. FCRA

Rivera alleges that Trans Union has "willfully and conspicuously violated" the following sections of the FCRA: 15 U.S.C. § 1681a, § 1681c, § 1681e, § 1681g, and § 1681i. ECF No. 44 at 6. I will address his claims under each of these sections in turn.

#### 1. Section 1681a

Rivera contends that Trans Union violated "15 USC 1681a(2)(i) [and] section 1681a(2)(B)" by including in his consumer report "[t]ransactional information that is between the consumer and the person making the report like the financial institution[,] payment history, utilization, charged off balances etc," as well as "specific extensions of credit directly or indirectly by the issuer of a credit card aka financial institutions like banks." ECF No. 44 at 13-14. Neither of the two provisions he cites actually exists. *See generally* 15 U.S.C. § 1681a.

Rather, as Trans Union notes, "Plaintiff seems to be referring to the definition of what constitutes a 'consumer report' for purposes of the FCRA." ECF No. 37-1; *see* 15 U.S.C. § 1681a(d). Definition provisions are not themselves actionable. *See Vertical Broad., Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 395 (E.D.N.Y. 2000) ("This citation…refers to a section setting forth definitions and creates no cause of action."); *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 934 (E.D.N.Y. 1979) ("These definitional provisions do not provide any right or remedy on which to base a claim. Plaintiffs' claims under these subsections are, therefore, dismissed with prejudice."). I will apply this definition when evaluating Rivera's claims under other parts of the FCRA but must dismiss his claim under this section.

#### 2. Section 1681b

Rivera alleges that TransUnion violated "15 USC 1681b(2)" because Rivera did not provide "written instructions" or otherwise consent to its collection of "personal identifiable

7

information to furnish a consumer report for business purposes" or to its distribution and sale of such information. ECF No. 44 at 8. Once again, the provision Rivera cites does not exist.

He appears to instead be referring to § 1681b(a), which sets forth various circumstances in which a consumer reporting agency can furnish a consumer report, including—but *not* limited to—when the agency is doing so "[i]n accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2). A consumer reporting agency can also furnish a consumer report to "a person which it has reason to believe…intends to use the information for" a permissible purpose—such as for "employment purposes; or…in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation"—or who "otherwise has a legitimate business need for the information…in connection with a business transaction that is initiated by the consumer; or…to review an account to determine whether the consumer continues to meet the terms of the account." *Id.* § 1681b(a)(3). In such circumstances, the consumer's consent is *not* required. *Id.*[7]

Here, Rivera alleges that Trans Union has furnished his consumer report and PII even though he did not direct or consent to such disclosures. ECF No. 44 at 7-8, 10.[8] He contends that this was done "for business purposes," *id.* at 8, but otherwise provides no information regarding the report or reports that allegedly violated § 1681b, such as when they were generated, to whom they were furnished, or for what purpose. Given the broad scope of

---

[7] Rivera suggests that consumer reports cannot be furnished to third parties unless "EACH permissible purpose under section 1681b which includes 1681b(2)" is satisfied. ECF No. 44 at 9. But this is not so; only one of the enumerated circumstances in § 1681b(a) must exist. *See RLI Ins. Co. v. Klonsky*, 771 F. Supp. 2d 314, 333 (D. Vt. 2011) ("Insurance underwriting is *one of* the permissible purposes for which a consumer reporting agency may furnish a consumer report." (citing 15 U.S.C. § 1681b(a)(3)(C)) (emphasis added)).

[8] Rivera alleges that this conduct was also inconsistent with Trans Union's "Data Privacy Policy." *See, e.g.,* ECF No. 44 at 7. This has no bearing on his claims under the FCRA.

8

permissible circumstances set forth in § 1681b(a), I cannot reasonably infer from Rivera's sparse allegations that Trans Union violated this section. Accordingly, Rivera's claims under § 1681b are dismissed.

### 3. Section 1681c

With respect to § 1681c, Rivera contends that Trans Union violated "section 1681c(4) [and] section 1681c(5)" by including on his consumer report "accounts placed for collection or charged to profit and loss and…other adverse item[s] of information." ECF No. 44 at 11, 13. Again, these specific provisions do not exist. *See generally* 15 U.S.C. § 1681c. Rivera appears to be referring instead to § 1681c(a), which provides, as relevant:

> Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:
>
> …
>
> (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
>
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.
>
> …

15 U.S.C. § 1681c(a).

Here, Rivera alleges that Trans Union has furnished on his consumer report "[a]ccounts charged for collections," and other "[a]dverse information" such as late payments, closed accounts, and "utilization amount[s]." ECF No. 44 at 11, 13. He has not, however, alleged that any of this information "antedate[d] the report by more than seven years." 15 U.S.C. § 1681c(a)(4), (5). Nor does the November 2023 credit report that is attached to Rivera's complaint suggest that Trans Union violated § 1681c—the oldest information on that report

9

appears to be from December 2016, less than seven years before that report was issued. *See* ECF No. 44-2 at 19. Rivera's claim under § 1681c is dismissed.

### 4. Section 1681e

Rivera further asserts that Trans Union violated various provisions of § 1681e. First, he contends that Trans Union violated § 1681e(a), which provides that "[e]very consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). As explained above, Rivera has not plausibly alleged that Trans Union violated § 1681b or § 1681c. And it is difficult to imagine how Rivera could show that Trans Union did not maintain reasonable procedures to prevent violations of these provisions without first establishing that a violation actually occurred.

Even if he could, however, Rivera's only allegation in support of this claim is conclusory. *See* ECF No. 44 at 9 ("Defendant TRANSUNION…has not established and complied with reasonable procedures to ensure before procuring my information (including transactional information) and selling my information that it and the seller/furnisher did so in accordance with EACH permissible purpose under section 1681b which includes 1681b(2)."). Accordingly, this claim is dismissed.

Next, Rivera alleges that Trans Union violated § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever it prepares a consumer report. 15 U.S.C. § 1681e(b). "To recover on a section 1681e(b) claim, a plaintiff must show that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting

agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Watson v. Caruso*, 424 F. Supp. 3d 231, 243-44 (D. Conn. 2019) (internal quotation marks omitted). "[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* at 244 (internal quotation marks omitted).

Here, Rivera has not plausibly alleged that his consumer reports contained inaccurate information. Though he contends that Trans Union reported inaccurate payment histories, utilization amounts, and balances, he bases these assertions on discrepancies between two reports provided by defense counsel, which he claims were dated September 5, 2024 and November 4, 2024. ECF No. 44 at 13, 17. But, as explained above, *see supra n. 6*, the November report was actually issued in 2023, not 2024, and the reports are of two different types: the November 4, 2023 report was a "Personal Credit Report," whereas the September 5, 2024 report summarized Trans Union's "Investigation Results." ECF No. 44-2 at 2-3, 19. Given the passage of time between these two reports and their distinct purposes and scopes, it is not reasonable to infer that differences between the reports are indicative of inaccuracies in Rivera's credit information.[9]

---

[9] I have not accepted as true the information in these reports, since Rivera contests their accuracy and has "relied on [them] for purposes other than truthfulness." *Pearson*, 125 F.4th at 407. I note, however, that the Investigation Report includes the following "Note on Credit Report Updates," which supports my conclusion regarding what inferences can be drawn from the alleged discrepancies between the November 2023 and September 2024 reports:

> Information in your credit report is *updated frequently* which means items you disputed may not appear on your credit report *or have already changed* by the time we received your dispute. In most cases, the Date Updated represents the last time the account information was updated or reported by the data furnisher.

ECF No. 44-2 at 4 (emphasis added).

Finally, Rivera contends that Trans Union violated § 1681e(e)(1)(B) and (e)(2). Section 1681e(e)(1)(B) bars persons from "procur[ing] a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report…each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report (or information)." 15 U.S.C. § 1681e(e)(1). Section 1681e(e)(2) provides that persons who procure a consumer report with the purpose of reselling the report or information therein must (1) "establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 1681b of this title," and (2) "make reasonable efforts to verify" the identity of the end user and the purpose for which the report will be used. *Id.* § 1681e(e)(2).

Rivera's claims under § 1681e(e) fail for several reasons. First, he has not plausibly alleged that Trans Union procured his consumer report from another entity for purposes of reselling. Though Rivera has made general allegations to this effect, *see* ECF No. 44 at 8, he must do more than recite the statutory language to plead a plausible claim. *See Diaz v. Gap, Inc.*, No. 22-CV-07371 (DG) (JAM), 2025 WL 1293308, at *22 n.20 (E.D.N.Y. Mar. 31, 2025). Without any allegations regarding when or to whom Trans Union sold Rivera's information—or how or from whom Trans Union procured his consumer report—I cannot reasonably infer that § 1681e(e) applies to Trans Union.

Further, with respect to § 1681e(e)(1)(B), Rivera mistakenly contends that Trans Union must satisfy *each* of the permissible purposes set forth in § 1681b. *See* ECF No. 44 at 8 ("TRANSUNION…has in fact procured my consumer report ('information") for the purposes of reselling…not in accordance with this section 1681e(e)(1)(B) due to its procedures in doing so

NOT meeting EACH permissible purpose under section 1681b…."). As explained already, *see supra* n.7, only one of the permissible circumstances in § 1681b must be satisfied. Rivera has thus failed to plausibly allege that Trans Union did not make the appropriate disclosures to the entity from which it allegedly purchased his consumer report.

Nor has Rivera plausibly alleged that Trans Union violated § 1681e(e)(2). Again, he has failed to plausibly allege that Trans Union—the credit reporting agency that generated the report—"procure[d]" the report from some other person or entity. Also, as with his claim under § 1681e(a), it is difficult to imagine how Rivera could prevail under § 1681e(e)(2) without establishing a violation under § 1681b. And, as explained above, he has failed to state a plausible claim under this provision. Rivera's allegations in support of this claim are likewise conclusory. *See* ECF No. 44 at 9 ("Defendant TRANSUNION…has not established and complied with reasonable procedures to ensure before procuring my information (including transactional information) and selling my information that it and the seller/furnisher did so in accordance with EACH permissible purpose under section 1681b which includes 1681b(2)."). Rivera's claims under § 1681e(e) are thus also dismissed.

### 5. Section 1681i

Finally, Rivera alleges that Trans Union violated "15 USC 1681i(B), 15 USC 1681i(7), 15 USC 1681i(5)(A)(i), 15 USC 1681i(2)(A), 15 USC 1681i(6)(B)(iii), 15 USC 1681i(4), 15 USC 1681i(5)(B)(ii), 15 USC 1681i(5)(B)(iii)(I), 15 USC 1681i(5)(C)." ECF No. 44 at 14. As with his other FCRA claims, the specific provisions he cites do not exist. *See generally* 15 U.S.C. § 1681i. Generally speaking, however, § 1681i sets forth procedures that consumer reporting agencies must follow when consumers dispute the accuracy of reported information. For example:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly…of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…, before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

"Similar to a section 1681e(b) plaintiff, a plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate." *Khan v. Equifax Info. Services, LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (internal quotation marks omitted). As explained already, Rivera has not plausibly alleged that Trans Union reported inaccurate information on his consumer reports. Accordingly, his claims under § 1681i are dismissed.

### B. GLBA & Privacy Act

Rivera also cites various provisions and regulatory rules under the GLBA and the Privacy Act. ECF No. 44 at 6. But, in his opposition brief, Rivera explains that he is not seeking damages under the GLBA and Privacy Act and has "merely sited [sic] these Acts to further prove his clams against defendant as these Acts correlate and apply with the FCRA." ECF No. 48 at 3. To the extent that the complaint states claims under either of these statutes, I find that they have been voluntarily dismissed by Rivera.

Additionally, I note that "it is well-settled that there is no private right of action to bring…a claim [under the GLBA]." *Harkins v. Citizens Bank Natl. Assn.*, No. 6:24-CV-06649 EAW, 2025 WL 1371364, at *8 (W.D.N.Y. May 12, 2025). And the Second Circuit has made clear that "that the private right of civil action created by the Privacy Act is specifically limited

to actions against agencies of the United States government." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). Any such claims are thus dismissed with prejudice.

### C. Dismissal with Prejudice

Rivera's claims under the FCRA are likewise dismissed with prejudice, and the Court will not allow further amendments to the complaint. The scheduling order made clear that any motions to amend the pleadings had to be filed by December 6, 2024, unless they were "supported by a showing of good cause." ECF No. 36 at 1. Rivera cannot make such a showing. He has already had three opportunities to amend his complaint, including in response to Trans Union's motion for judgment on the pleadings. The arguments in the present motion to dismiss are either the same or similar to the arguments raised in the motion for judgment on the pleadings. I advised Rivera to "either file a response to the motion [for judgment on the pleadings] or file an amended complaint *in which he pleads as many facts as possible*…to address the alleged defects" in that motion. ECF No. 39 (emphasis added). Given Rivera's experience litigating similar cases before this court, he should also be well aware of the need to plead facts that support his claims. *See, e.g.*, *Rivera v. Gatestone & Co.*, No. 3:23-CV-00035-MPS, 2023 WL 5530685, at *3 (D. Conn. Aug. 28, 2023) (dismissing Rivera's claims after explaining that, "[t]o survive a motion to dismiss, each of Rivera's causes of action must be supported by sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face" (internal quotation marks and citations omitted)). That Rivera has nonetheless failed to state a plausible claim suggests that he cannot in fact do so and that any future amendments would be futile. Rivera's claims are thus all dismissed with prejudice.

## IV.     CONCLUSION

For the reasons explained above, I GRANT Trans Union's motion to dismiss under Rule 12(b)(6). Rivera's claims are dismissed with prejudice. The pending motion for summary judgment (ECF No. 54) and motion to stay (ECF No. 57) are denied as moot, and the Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        May 30, 2025